## STATE v. SIOUX FALLS BREWING CO.

1. Under a statute which does not specifically name the liquors the sale of which as a beaverage it prohibits, but considers and holds all liquors intoxicating which are spirituous, malt, vinous or fermented, as well as all mixtures thereof which will produce intoxication, the malt or intoxicating quality of beer, when in question, should be shown by the evidence, the weight and sufficiency of which is for the court or jury, as the case may be.

2. It being a matter of general knowledge that there are varieties of the beverage denominated "beer," and used in this state, that contain no malt and are not intoxicating, we hold that the term "beer," in the absence of evidence as to its quality or effect, does not import an intoxicating liquor.

3. In the absence of a statute declaring that "beer" shall be deemed an intoxicating liquor, the mere statement of the witnesses that they bought beer, without any evidence as to the purpose for which it was bought, or that it contained malt, or of its effect upon persons using it, or of the manner in which it was made, is not sufficient to show that it was intoxicating; and a court will not take judicial notice that beer so sold was a malt or intoxicating liquor.

(Syllabus by the court.   Opinion filed March 3, 1894.)

Appeal from circuit court, Minnehaha county. Hon. FRANK R. AIKENS, Judge.

Action by the state of South Dakota against the Sioux Falls Brewing Company, Moriz Levinger and Moses Kaufman to abate an alleged liquor nuisance.  There was judgment for plaintiff, and defendants appeal.   Reversed.

The facts are stated in the opinion.

*McMartin & Carland,* for appellant.

Under the laws of this state relating to intoxicating liquors any person or corporation may manufacture intoxicating liquors for all purposes without creating a nuisance, and may manufacture for personal use, or for shipment to himself or itself for use in another state, or for delivery to a druggist having a permit to sell for certain purposes, without committing a crime. None of the witnesses for the state who testified that they purchased beer at the place alleged to be a nuisance, say what was done with the beer, or what use was made of it.   There was no other evidence in the case except what may be claimed from the finding of certain beer on the premises.   The finding of beer in a brewery is not *prima facie* evidence of a nuisance.

Courts will not take judicial notice that the term "beer" in the absence of all evidence as to quality and effect, imports an intoxicating or malt liquor.   State v. Beswick, 13 R. I. 211; Blatz v. Rohrback, 116 N. Y. 450; Commonweneth v. Hardiman 9 Gray 136; Pekin v. Snelzel, 21 Ill. 464; Hansberg v. People, 120 Ill. 218, N. E. Rep. 857.

*Robert Dollard, Attorney General,* and *William Wilkes,* for respondent.

The term "beer" denotes a beverage which is intoxicating. 11 Am. and Eng. Enc. of Law, 579; Netro v. State, 5 So. Rep. 8; Watson v. State, 55 Ala. 658; State v. Jenkins, 32 Kan. 477; State v. Teissedre, 30 Kan. 476; Beibe v. State, 6 Ind. 520; State v. Yager, 72 Io. 421; Hanson v. Lockhart, 25 Ind. 117; Com. v. Bloso, 116 Mass. 56; State v. Semp, 16 Mo. 689; Ran v. People, 63 N. Y. 279; State v. Gurst, 98 N. C. 720; State v. Gazette, 11 R. I. 592; Briffitt v. State, 58 Wis. 39; State v. Volmer, 6 Kan. 371; Inegon v. State, 93 Ind. 251; Kerfon v. Bauer, 15 Neb. 150.

FULLER, J.   The relief demanded in this action is that a certain brick building, known as the "Sioux Falls Brewery," situated on lots 12, 13 and 14, of block 26, of Brookings & Edmunds' Sioux Falls, in the city of Sioux Falls, erected by the Sioux Falls Brewing Company, a corporation, be declared a common nuisance; and that the same be abated and perpetually enjoined; and that the defendants Levenger and Kauffman, their agents and servants, be restrained and enjoined from hereafter keeping for sale, or selling, any intoxicating liquors at the place aforesaid, contrary to the provisions of Sections 1 and 13 of Chapter 101 of the Laws of 1890.   The answer was a general denial, and, upon the issues thus raised, the cause was tried to the court, without a jury.   The court found, in effect, that William A. Wilkes, the person who brought the action in behalf of the state, was at the time a citizen of Minnehaha county, in said state; that the premises described in the complaint were at the commencement of this action, and now are, a brewery, and a place where intoxicating liquor, to-wit, beer, was and is kept for sale; barter and delivery as a beverage; that the defendant, Moriz Levinger, is the president of the Sioux Falls Brewing Co; and that he did during the month of September, 1890, and at divers times subsequent thereto, sell and deliver intoxicating liquors, to-wit, beer, as a beverage, within the building and upon the premises described in the

complaint.   As a conclusion of law the court found, in effect, that the brewery building is a common nuisance, and that the defendants the Sioux Falls Brewing Company and Moriz Levinger be enjoined from further keeping and maintaining said nuisance, and that the same be abated.   Judgment was entered accordingly, and the defendants appeal.

Section 6, Chapter 101, Laws of 1890, provides that "all spirituous, malt, vinous, fermented or other intoxicating liquors or mixtures thereof, by whatever name called, that will produce intoxication, shall be considered and held to be 'intoxicating liquors,' within the meaning of this act."   Section 13: "All places where intoxicating liquors are sold, bartered or given away in violation of any of the provisions of this act, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for sale, barter or delivery in violation of this act, are hereby declared to be common nuisances; and if the existence of such nuisance be established either in a criminal or equitable action, .*  *  *  the sheriff, his deputy or under sheriff,  *  * of the county where the same is located shall be directed to shut up and abate such place by taking possession thereof. *  *  *  The finding of such intoxicating liquor or liquors upon such premises shall be *prima facie* evidence of the existence of the nuisance complained of.  *  *  *"  Section 22:  "*  *  * In actions or proceedings for the abatement of nuisances under this act, evidence of the general reputation of the place designated in the complaint shall be admissible for the purpose of proving the existence of such nuisance; and in all cases other than those where intoxicating liquor is lawfully sold by virtue of the provisions of this act, the fact that any person engaged in any kind of business has or keeps posted in or about his place of business a receipt or stamp showing payment of the special tax levied under the laws of the United States upon the business of selling distilled malt or fermented liquors, or the holding of a license from the government of the United States

in the name of any person, persons or corporations, to sell intoxicating liquors, shall be held and deemed *prima facie* evidence against such person, persons or corporations, that he, they or it are keeping for sale and selling intoxicating liquors contrary to law.   *   *   *"

The assignments of error relate to all the findings of fact and conclusions of law predicated thereon.   As a consideration of many of the questions discussed in the briefs submitted by the respective counsel will not be essential, in our opinion, to a determination of this appeal, we will address our inquiry to the questions raised concerning the sufficiency of the evidence to sustain the findings of fact and conclusions of law upon which a judgment and decree in favor of the plaintiff were based. Sheriff Sundback testified, in substance, that in the month of October, 1890, he served the papers in this case upon the defendant Levinger, at the place known as the "Sioux Falls Brewery," and that said Levinger seemed to be in charge of the premises.   In response to a request made by plaintiff's counsel to state what he found upon the premises, he submitted the following schedule or invoice, which seems to have been admitted without objection: A. "21 45-barrel hogsheads, 945 barrels; 10 20-barrel hogsheads, 200 barrels; 10 80-barrel hogsheads, 800 barrels; 8 50 barrel hogsheads, 400 barrels; 10 40-barrel hogsheads, 400 barrels; 8,000 bushels malt; 4,700 bushels barley; 600 ¼ beer kegs; 175 ⅛ beer kegs; 1,500 tons ice; 10 bales hops; 5 tons corn meal. Q. What was that, Mr. Sundback? A. It was beer." Witness stated that he could not tell what was being done on the premises from personal knowledge; but, from what he saw and what he surmised, he judged that they were brewing beer; and that it was his impression that they were still so engaged, but he could not swear to that, although he had seen Mr. Levinger there from time to time until the date of the trial.   F. C. Smith testified that he was on the premises in question about the 6th of last May, in company with a man who got a keg of beer and put it in the buggy, and drove off with it; he did not know

whether he paid for it, as witness did not go into the premises; that he knew it was beer because he drank some of it. James Gushard testified that he visited the premises last October and bought a keg of beer from Mr. Levinger, and paid him for it, and took it away with him. Sam C. Bragstad testified that in September, 1890, he went up there and asked Mr. Levinger if he could get a keg of beer, and that he bought it, and it was delivered to him at the hotel where he was at the time stopping. W. A. Wilkes, who brought this action, in the name of the state, testified that he has been for the last 12 years, and now is, a resident and citizen of Minnehaha county, S. D.; that the defendant Mr. Levinger was at the time of the commencement of this action, and since that time has been, in charge of the brewery described in the complaint, as one of its managers; that the Sioux Falls Brewery is located as described in the complaint, to-wit: on lots 12, 13 and 14, of block 26, Brookings & Edmunds' Sioux Falls, in the city of Sioux Falls.

It will be noticed that our statute does not by its name define "beer" as an intoxicating liquor, and prohibit its sale as a beverage; and, in our opinion, proof that the defendant simply sold beer is not, under such statute, sufficient to sustain a find-ing that he sold intoxicating liquor, for the reason that "beer" is a generic term, and is applied indiscriminately to malt beer, as well as to beer which is made from various extracts, and from the roots and other parts of certain plants and trees; and the court before whom the case was tried could not know officially that the beer sold to the witness, or kept for sale by the defendant, was a malt or intoxicating liquor, without evidence of that fact. Blatz v. Rohrbach, 116 N. Y. 450, 22 N. E. 1049. Counsel for the plaintiff contends that the term "beer" is uniformly held by the courts to be an intoxicating liquor, and, in support of such contention, directs our attention to 11 Am. & Eng. Enc. Law, pp. 579, 580, and cases there cited. We will consequently examine such authorities, for the purpose of determining whether they will sustain the position taken and

urged by counsel, and will quote from some of them, as we deem it instructive so to do. On pages 579, 580, 11 Am. & Eng. Enc. Law, we find the following: "Where a statute prohibits the sale of intoxicating liquors only, and not 'beer' by name, there being some kinds of beer which are neither a malt liquor nor intoxicating, * * * it must be shown that it is one of the liquors named in the statute." Nesto v. State, (Fla.) 5 South. 8, is one of the cases cited, and from which we quote the following: "The plaintiff in error was tried under section 11, c. 3413, Laws Fla. 1883, for carrying on the business of dealer in spirituous, vinous, and malt liquors; * * * and, to warrant a conviction, it was necessary for the state to prove that the liquor sold was either a spirituous, vinous, or malt liquor. The evidence shows that the plaintiff in error sold 'beer,' but this is not sufficient unless it is shown that the liquor sold was 'malt beer.'" The judgment of the trial court was reversed. In Hansberg v. People, 120 Ill. 21, 8 N. E. 857, the court says: "From the definition of the word 'beer,' (referring to Webster's Unabridged Dictionary,) can it be said that the article purchased was an intoxicating liquor? Suppose the beer purchased was made of spruce or ginger or sassafras; according to Webster, it would have been beer, and yet not an intoxicating liquor, and the statute would not have been violated by its sale The fact is beyond dispute that there are different kinds of beer. Some are intoxicating, and others are not. Whether beer which may be sold in a given case is malt or intoxicating beer, or ginger or root beer, or some other of the kinds of beer which are known not to be intoxicating, is always a question of fact, to be determined from the evidence introduced upon the trial. Our statute does not prohibit the sale of beer. If it did, it would be sufficient for the prosecution to prove a sale of beer, just as was done in this case. But, unless language is to be disregarded, when beer has been sold it is necessary to prove by the evidence that the article sold falls within the prohibition of the statute; otherwise, a convic-

tion cannot be sustained." The court cites, among others, the following authorities as cases in point: Com. v. Chappel, 116 Mass. 7; Com. v. Blos, Id. 56; State v. Starr, 67 Me. 242; State v. Wall, 34 Me. 165; State v. Biddle, 54 N. H. 379. In State v. Beswick, 13 R. I. 211, we find and quote the following. The testimony submitted was this, to wit: Counsel asked the defendant what he sold, and the defendant replied, 'Beer.' The court instructed the jury that beer is a well-known malt liquor, and, if the defendant sold under that name something which was not a malt liquor, it ought to appear in the testimony as a matter of defense, or, otherwise, the jury should presume it was a malt liquor. We think this was error. We do not think that there is any presumption of law that, when a man speaks of beer, he means a malt liquor, but we think that what he means is purely a question of fact for the jury. It is a matter of common knowledge that there are beverages containing neither malt nor other intoxicating ingredients which are called beer." In Kerkow v. Bauer, 15 Neb. 150, 18 N. W. 27, the court says: "In the eleventh section of the act, malt, spirituous, and vinous liquors are classed together as intoxicating drinks; * * * and by the act approved February 28, 1881, (Comp. St. chapter 50, § 31,) beer is classed with wine and other intoxicating liquors. * * * By these acts we consider the question of the intoxicating qualities of beer settled." Mr. Black in his work on Intoxicating Liquors, says: "On a trial for selling intoxicating liquors in violation of law, it is necessary to show by the evidence that the liquor sold was intoxicating. There are certain kinds of liquors in regard to which the courts will take judicial notice that they are intoxicating; such as whisky, brandy, rum or gin. And hence, for example, if the testimony shows that the article sold was whisky, it is not necessary to follow this up with proof that whisky is intoxicating. But, as a general rule, * * * the question whether or not it was intoxicating liquor is one of fact to be determined by the jury. In regard to beer, ale and cider, it is

doubtful whether their intoxicating properties must not be proved. As we have pointed out in another place, many authorities hold that the question in regard to such liquors is whether their use is ordinarily or commonly attended with entire or partial intoxication, and that this is for the jury. * * * Of course, if the statute declares that ale, beer, or cider shall be deemed intoxicating, this dispenses with the necessity of evidence on that point." Black, Intox. Liq. chapter 20, § 521, and cases there cited.

The evidence in this case is silent as to the purpose for which the beer was bought or sold, and there are no circumstances that will, in our opinion, justify an inference that it was used as a beverage. Two witnesses testified that they bought beer, and one of them said he drank beer. This should have been followed up by evidence as to its quality and effect, and the purposes for which it was bought and used. There is nothing to indicate that the witnesses were reluctant, and it is fair to presume that they were in possession of material facts, and willing to tell the whole truth. As to what was found by the officer upon the premises, the evidence is certainly uncertain and vague. The single isolated sentence, "It was beer," is the only evidence upon which to base a conclusion that he found intoxicating liquor, and it is difficult to determine to what that statement relates. If the witness had reference to the schedule offered in evidence, in which he itemized corn meal, hops, ice, kegs, barrels, hogsheads, malt, and barley, and intended to characterize these various commodities as beer, we must conclude that the evidence is of but little value in determining the issues in this case. Under a statute which does not specifically name the liquors the sale of which, as a bever-age it prohibits, but considers and holds all liquors intoxicating which are spirituous, malt, vinous, or fermented, as well as all mixtures thereof which will produce intoxication, we are disposed to believe that the malt or intoxicating qualities of beer, when in question, should be shown by the evidence, the

weight and sufficiency of which is for the court or the jury, as
the case may be.   We also believe it to be  a matter of general
knowledge that the varieties of beverage  denominated "beer,"
and used in this state, that contain no malt, and that are
known not to be intoxicating,  far outnumber those that do
contain malt and are intoxicating.   Mr. Rice,  in the first vol-
ume of  his work on Evidence,  at page 97, says:   "The term
'beer,' in the absence of  evidence as to its  quality  or  effect,
does not import an intoxicating liquor."   For the  reasons we
have mentioned, and  upon the  authorities  examined,  we con-
clude that the judgment and decree of the trial court should be
reversed.

KELLAM, J.   I concur  in the  decision of this case.   The
statute of the state known as the  "Prohibitory Law" is, so far
as  this case is concerned, directed against the sale, as a bever-
age, of "any spirituous, malt, vinous, fermented, or other in-
toxicating liquors."   As one of the  means of enforcing such
prohibition, section 13 makes the place where such intoxicating
liquors are  sold or  kept for sale a common nuisance.   It is
plain that, to convict any place as  a  nuisance  under this sec-
tion, liquors of the prohibited class must be shown to have been
sold or kept for sale at such place.    The record is certified as
containing all the evidence introduced upon  the trial; so  that
the findings of fact of the trial court must stand upon  the evi-
dence, unaided by any  presumption of sufficiency.   The evi-
dence of Sundback is  that he found on  the premises certain
hogsheads and beer kegs, and malt, barley, ice, hops, and corn
meal.   It is not shown whether  the  hogsheads and kegs were
empty or filled, or that they appeared to contain  any contents
whatever.   Smith bought a "keg of beer," and "used" some
of the  contents.   Whether  he drank it, or used it in some
other way, or for some other purpose than as a beverage, is
not  attempted  to  be shown.   Gushard "got some beer,"—"a
keg of beer"  What he got it for, or what he did with it, is

left entirely to conjecture.    The selling of intoxicating liquors as a beverage is made a crime by the law, and the place where they are so sold or kept for sale, a common nuisance; and it is not reasonable or right to expect courts, even though they may be in active sympathy with the law, to reverse every presumption of innocence that has for ages attached in criminal cases, and hold a defendant guilty because the circumstances are simply consistent with his guilt.    In this case the defect is not in the law itself, but in the theory that it requires little or no evidence of guilt to convict under it.    I think I should hold, with the majority of the court, that in these days the simple term "beer," unexplained and unaccompanied by any evidence as to its quality or appearance, or the character of the place where it is kept or sold, does not necessarily mean a malt or intoxicating liquor.    It has so been held very recently by courts of the highest standing.    See Blatz v. Rohrback, 116 N. Y. 450, 22 N. E. 1049; Hansberg v. People, 120 Ill. 21, 8 N. E. 857.    Other courts, however, have held differently, and I prefer to rest my concurrence in the decision of this case on the ground which I have indicated.